UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

EDWARD COCHRAN,

                                       **Plaintiff,**

                     v.                                  3:13-CV-593
                                                                        (FJS)

**CAROLYN W. COLVIN,**
**Commissioner of Social Security,**

                                       **Defendant.**
_____

**APPEARANCES**                                        **OF COUNSEL**

**LACHMAN & GORTON**                      **PETER A. GORTON, ESQ.**
P.O. Box 89
1500 East Main Street
Endicott, New York 13761-0089
Attorneys for Plaintiff

**SOCIAL SECURITY ADMINISTRATION**      **KAREN T. CALLAHAN, ESQ.**
**OFFICE OF REGIONAL**
**GENERAL COUNSEL – REGION II**
26 Federal Plaza – Room 3904
New York, New York 10278
Attorneys for Defendant

**SCULLIN, Senior Judge**

**MEMORANDUM-DECISION AND ORDER**

**I. INTRODUCTION**

Plaintiff Edward Cochran brought this action pursuant to the Social Security Act, 42 U.S.C. §§ 405(g) and 1383(c)(3) ("Act"), seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner"), denying his application for Supplemental Security Income ("SSI"). *See generally* Dkt. Nos. 1, 19. Currently before the Court are the parties' cross-motions for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. *See* Dkt. Nos. 19, 20.

**II. PROCEDURAL HISTORY AND BACKGROUND**

Plaintiff filed an application for SSI on December 18, 2008, alleging disability beginning on December 10, 1991. *See* Administrative Record ("AR") at 191.[1] Plaintiff's application was denied and, after a hearing, Administrative Law Judge Elizabeth Koennecke ("ALJ") issued an unfavorable decision on September 14, 2010. *See id.* at 82-96. The Appeals Council of the Social Security Administration then reviewed Plaintiff's application and remanded to the ALJ. *See id.* at 97-101.

On remand, Plaintiff had a second hearing before the ALJ on March 5, 2010, at which attorney Peter Gorton represented him. *See* AR at 46. The ALJ then issued a second unfavorable decision on April 3, 2012, in which she made the following findings "[a]fter careful consideration of all the evidence . . . ."

---

[1] To the extent that the record appears to be inconsistent with Plaintiff's brief and the ALJ's written decision with respect to the alleged onset date of Plaintiff's disability, the Court notes that neither Plaintiff nor the ALJ cited the record when stating that Plaintiff alleged benefits as of April 30, 2008. *See* Dkt. No. 19, Pl.'s Br., at 3; AR at 13. At any rate, the difference between these two dates is immaterial because Plaintiff could not have received benefits until January of 2009, the month after he filed his application. *See* 20 C.F.R. § 416.335.

1) Plaintiff had not "engaged in substantial gainful activity since December 1, 2008, the application date."
2) Plaintiff "has the following severe impairments: left ankle osteoarthritis and bipolar disorder."
3) Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1."
4) Plaintiff "has the residual functional capacity to perform less than the full range of light work as defined in 20 CFR 416.967(b), in that [Plaintiff] is able to lift and/or carry twenty pounds occasionally and ten pounds frequently, stand and/or walk for two hours in an eight-hour workday, and sit for six hours in an eight-hour workday. [Plaintiff] is able to occasionally bend, twist, and kneel. Additionally, [Plaintiff] is able to continuously understand, remember, and carry out simple instructions and directions, frequently respond appropriately to supervision, co-workers, and work situations, and frequently deal with changes in a routine work setting."
5) Plaintiff "is unable to perform any past relevant work."
6) Plaintiff "was born on February 21, 1964, and was forty-four years old, which is defined as a younger individual age 18-49, on the date the application was filed."
7) Plaintiff "has at least a high school education and is able to communicate in English."
8) "Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that [Plaintiff] is 'not disabled,' whether or not [he] has transferable job skills."
9) "Considering [Plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform."
10) Plaintiff "has not been under a disability, as defined in the Social Security Act, since December 1, 2008, the date the application was filed."

*See* AR at 16-27 (citations omitted).

The ALJ's decision became the Commissioner's final decision on May 8, 2013, when the Appeals Council denied Plaintiff's request for review. *See* AR at 1-6. Plaintiff then commenced this action on May 23, 2013, filing a supporting brief on January 17, 2014. *See* Dkt Nos. 1, 19.[2] Defendant filed a response brief on February 14, 2014. *See* Dkt. No. 20.

---

[2] Plaintiff's counsel explained that he filed a corrected copy of Plaintiff's Brief because he mistakenly allowed an early draft to be filed. *See* Dkt. No. 19-1. Counsel further explained that
(continued . . .)

In support of his motion, Plaintiff argues that there is not substantial evidence to support the ALJ's findings with respect to 1) the severity of certain of his impairments, 2) his residual functional capacity, and 3) whether other work suitable to Plaintiff exists in significant numbers in the national economy. *See generally* Dkt. No. 19, Pl.'s Br.

### III. DISCUSSION

**A. Standard of review**

Absent legal error, a court will uphold the Commissioner's final determination if there is substantial evidence to support it. *See* 42 U.S.C. § 405(g). The Supreme Court has defined substantial evidence to mean "'more than a mere scintilla'" of evidence and "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation omitted). To be eligible for SSI, a claimant must show that he suffers from a disability within the meaning of the Act. The Act defines "disability" as an inability to engage in substantial gainful activity ("SGA") by reason of a medically determinable physical or mental impairment that can be expected to cause death or last for twelve consecutive months. *See* 42 U.S.C. § 1382c(a)(3)(A). To determine if a claimant has sustained a disability within the meaning of the Act, the ALJ follows a five-step process:

> 1) The ALJ first determines whether the claimant is engaged in SGA. *See* 20 C.F.R. §§ 416.920(b), 416.972. If so, the claimant is not disabled. *See* 20 C.F.R. § 416.920(b).
>
> 2) If the claimant is not engaged in SGA, the ALJ determines if the claimant has a severe impairment or combination of impairments. *See* 20 C.F.R. § 416.920(c). If not, the claimant is not disabled. *See id*.

---

(. . . continued)
there was no substantive difference between the documents. *See id.* Thus, in the absence of any opposition by, or apparent prejudice to, Defendant, the Court considers the corrected copy of Plaintiff's brief.

> 3) If the claimant has a severe impairment, the ALJ determines if the impairment meets or equals an impairment found in the appendix to the regulations (the "Listings"). If so, the claimant is disabled. *See* 20 C.F.R. § 416.920(d).
>
> 4) If the impairment does not meet the requirements of the Listings, the ALJ determines if the claimant can do his past relevant work. *See* 20 C.F.R. § 416.920(e), (f). If so, he is not disabled. *See* 20 C.F.R. § 416.920(f).
>
> 5) If the claimant cannot perform his past relevant work, the ALJ determines if he can perform other work, in light of his RFC, age, education, and experience. *See* 20 C.F.R. § 416.920(f), (g). If so, then he is not disabled. *See* 20 C.F.R. § 416.920(g). A claimant is only entitled to receive benefits if he cannot perform any alternative gainful activity. *See id*.

For this test, the burden of proof is on the claimant for the first four steps and on the Commissioner for the fifth step, if the analysis proceeds that far. *See Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998) (quotation omitted).

**B. ALJ's finding that Plaintiff's obesity, plantar fasciitis, and sleep apnea were not severe impairments**

At step two of the disability analysis, the ALJ must determine whether the claimant has a severe impairment or combination of impairments. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c). In order to be severe, an impairment or combination of impairments must "significantly limit[] your physical or mental ability to do basic work activities." *Id.* An impairment or combination of impairments fails to meet this standard when the evidence "establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work . . . ." Social Security Ruling ("SSR") 85-28, 1985 WL 56856, *3 (1985). "[E]vidence about the functionally limiting effects of an individual's impairment(s) must be evaluated" and "symptom-related limitations and restrictions must be

considered at this step of the sequential evaluation process . . . ." SSR 96-3p, 1996 WL 374181, *2 (July 2, 1996).

In this case, Plaintiff argues that the ALJ erroneously declined to find that his obesity, plantar fasciitis, and sleep apnea amounted to severe impairments. *See* Dkt. No. 19, Pl.'s Br., at 15. With respect to obesity, he argues that consulting orthopedist Dr. Weisner specifically noted that Plaintiff's obesity exacerbates his ankle condition. *See id.* at 16 (citing AR at 573). With respect to sleep apnea, Plaintiff argues that treating physician Dr. Shah diagnosed him with "severe" sleep apnea. *See id.* at 16 (citation omitted). Finally, with respect to plantar fasciitis, Plaintiff points out that treating physician, Dr. Brosnan, noted "tenderness primarily over the plantar fascia" which, Plaintiff argues, "clearly affects the ability to stand and walk. *See id.* at 16-17 (citing AR at 550).

The ALJ, in her written decision, found that Plaintiff "has been medically managed" for, among other things, obesity, sleep apnea, and plantar fasciitis in the left foot. *See* AR at 17. She further found that "there is not enough documentation to show that these conditions rise to the level of a severe impairment." *See id.* With respect to obesity, the ALJ discussed Dr. Weisner's opinion. *See* AR at 18. In particular, she noted that, although Dr. Weisner found that Plaintiff's obesity contributes to his ankle pain, he also observed that Plaintiff "uses no assistive devices" and that he "ambulated well without limp." *See id.* (quoting AR at 574). The ALJ also discussed the opinion of consulting physician Dr. Magurno, who noted the extent of Plaintiff's activities and that he did not use any assistive devices. *See id.* at 17. Accordingly, the Court finds that there was substantial evidence in the record to support the ALJ's finding that obesity had "no more than a minimal effect" on Plaintiff's ability to work. SSR 85-28, 1985 WL 56856, at *3.

With respect to plantar fasciitis, the ALJ discussed Dr. Brosnan's opinion. *See* AR at 17. She found that, although Dr. Brosnan diagnosed plantar fasciitis of the left foot, he noted that Plaintiff suffered from "occasional discomfort [but] he did get significant relief with the cortisone shot . . . ." *See id.* (quoting AR at 548). Further review of Dr. Brosnan's notes shows that, although he noted "[t]enderness over the plantar fascia," *see id.* at 549, X-rays of Plaintiff's left foot yielded "no significant abnormalities," *see id.* at 550. Accordingly, the Court finds that there was substantial evidence in the record to support the ALJ's finding that plantar fasciitis had "no more than a minimal effect" on Plaintiff's ability to work. SSR 85-28, 1985 WL 56856, at *3.

Finally, with respect to sleep apnea, the ALJ noted Dr. Shah's observation that Plaintiff was being treated for sleep apnea. *See* AR at 17. However, the ALJ also noted that Dr. Shah found that Plaintiff had "normal" pulmonary function studies. *See id.* Thus, although Dr. Shah diagnosed Plaintiff with "severe" sleep apnea, *see id.* at 383, the record is generally devoid of evidence tending to show that this impairment "significantly limits" his ability to do basic work activities. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c). In other words, no treating or examining physician identified any functional limitations arising out of Plaintiff's sleep apnea. For this reason, the Court finds that the ALJ was justified in "relying on what the record does not say" in this instance. *Dumas v. Schweiker*, 712 F.2d 1545, 1553 (2d Cir. 1983) (citations omitted). Accordingly, the Court finds that there was substantial evidence in the record to support the ALJ's finding that sleep apnea had "no more than a minimal effect" on Plaintiff's ability to work. SSR 85-28, 1985 WL 56856, at *3.

In summary, for the above-stated reasons, the Court finds that there was substantial evidence in the record to support the ALJ's finding that Plaintiff's obesity, sleep apnea, and

plantar fasciitis did not amount to severe impairments, or a combination thereof, as defined in the regulations. *See Richardson*, 402 U.S. at 401.

**C. ALJ's RFC analysis**

Between steps three and four of the disability analysis, the ALJ must determine the claimant's residual functioning capacity ("RFC"), which is defined as "the most you can still do [in a work setting] despite your limitations." 20 C.F.R. § 416.945(a)(1); *see also* 20 C.F.R. § 416.920(e). The RFC analysis considers "all of your medically determinable impairments of which we are aware," even if they are not severe. *See* 20 C.F.R. § 416.945(a)(2). The ALJ is to consider "all of the relevant medical and other evidence" in assessing RFC. *See* 20 C.F.R. § 416.945(a)(3).

In this case, Plaintiff advances the following arguments with respect to the ALJ's RFC analysis. First, Plaintiff argues that there was no substantial evidence supporting the conclusion that he can frequently respond appropriately to supervision, co-workers, and situations, and frequently deal with changes in a routine work setting. *See* Dkt. No. 19 at 17. Second, Plaintiff argues that the ALJ did not consider the full extent of his physical limitations. *See id.* at 21. In particular, Plaintiff argues that the "combination of his arthritic ankle, bursitis of the hip, knee injury, and obesity cause significant limitations on his ability to walk and stand . . . ." *See id.*

With respect to Plaintiff's mental limitations, the ALJ noted Plaintiff's self-reports of "leaving challenging situations," such as a number of his past jobs and his first hearing before the ALJ, which Plaintiff attributed to his mental impairments. *See* AR at 22. However, the ALJ engaged in an appropriate credibility analysis and found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his mental impairments were only partially

credible. *See id.*; SSR 96-7p, 1996 WL 374186, *2 (July 2, 1996). In particular, the ALJ noted that Plaintiff was "a very different claimant" at his second disability hearing: he was "more relaxed, able to talk and answer questions, and appeared to be overall much better" than at his first hearing. *See* AR at 21. Additionally, the ALJ noted that Plaintiff was not fired from his job at either K-Mart or Catholic Charities. *See* AR at 22. With respect to Plaintiff's job at K-Mart, the ALJ found Plaintiff's testimony to "indicate[] a dislike of change and nothing more" because Plaintiff was not fired. *See id.* With respect to the Catholic Charities job, the ALJ noted that "this job did not end due to a physical or mental impairment; the employer was satisfied enough with [Plaintiff] to offer him another job." *See id.* Accordingly, the ALJ found that Plaintiff's "weak attachment to the workforce . . . detracts from his credibility regarding motivation to work." *See id.*

The ALJ also thoroughly considered the various medical evidence supporting the alleged limiting effects of Plaintiff's mental impairments. In particular, the ALJ considered Dr. Rahman's opinion that Plaintiff's temper "appear[ed] to be a little short" and that he got irritable when asked probing questions. *See* AR at 22. However, the ALJ also noted Dr. Rahman's observation that Plaintiff's speech was normal, that there was no evidence of perceptual or psychomotor disturbances, that his intelligence appeared to be average, that his memory function was intact, and that he denied having suicidal thoughts. *See id.* at 22-23. The ALJ also considered the opinion of consulting psychiatric examiner Dr. Moore, who noted that Plaintiff "can follow and understand simple directions and instructions, perform simple rote tasks under supervision, and consistently perform simple tasks." *See id.* at 23. Dr. Moore also noted that Plaintiff had intact attention and concentration and that he had the ability to learn simplistic and complex tasks. *See id.*

With respect to Plaintiff's physical limitations, the ALJ considered the opinion of consultative examiner, Dr. Magurno, who found that Plaintiff had "moderate limitations for squatting" and "mild limitations for walking, standing, and other weight bearing activities." *See* AR at 23. Similarly, she noted Dr. Weisner's opinion that Plaintiff was moderately restricted for prolonged standing and lifting heavy objects. *See id.* The ALJ further concluded that she properly considered Plaintiff's obesity because, by weighing the opinions of the examining physicians, all of whom noted Plaintiff's weight, she "necessarily considered [Plaintiff's] obesity." *See* AR at 25. The ALJ also discussed the opinions of Drs. Morog and Galu, as well as NP Lee. *See* AR at 24.

In sum, to the extent that Plaintiff points to evidence in the Administrative Record that reasonably might support a different conclusion in his favor, "whether there is substantial evidence supporting the appellant's view is not the question" on appeal. *Bonet ex rel. T.B. v. Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013) (instructing that ALJ need not discuss every piece of evidence submitted). Moreover, the Court finds that the ALJ properly weighed the various medical opinions in her analysis.[3] *See* 20 C.F.R. §§ 404.1527(c),(d); *see also Pitcher v. Astrue,* 3:05-CV-0672, 2008 WL 619175, *4 (N.D.N.Y. Mar. 3, 2008). For these reasons, the Court finds that substantial evidence supports the ALJ's findings in her RFC analysis and that she applied the appropriate legal standards. *See Richardson*, 402 U.S. at 401.

---

[3] Relatedly, the Court finds Plaintiff's argument that the ALJ failed to consider his propensity for absenteeism to be without merit. Plaintiff is correct that substantial gainful activity contemplates "'the performance of substantial services with reasonable regularity.'" *Beck v. Colvin*, No. 6:12-CV-06495(MAT), 2013 WL 55333571, *4 (W.D.N.Y. Oct. 7, 2013) (quoting *DiRienzis v. Heckler*, 748 F.2d 352, 353 (2d Cir. 1984)) (other citation omitted). In this case, however, the ALJ noted that Plaintiff did not miss any days of work at Broome County Developmental Center after his alleged onset of disability. *See* AR at 22. Moreover, because the Court finds that the ALJ appropriately weighed the medical opinions, it finds that the ALJ did not err by not concluding that Plaintiff was likely to be absent from work frequently as part of her RFC analysis.

**D. ALJ's reliance on vocational expert testimony**

At step five of the disability analysis, the Commissioner has the burden of "providing evidence that demonstrates that other work exists in significant numbers in the national economy that you can do, given your residual functional capacity" and "the vocational factors of age, education, and work experience, as appropriate in your case." 20 C.F.R. § 416.960(c)(2); *see also* 20 C.F.R. § 419.920(a)(4)(v), (g). At this stage, the ALJ may properly rely upon the Dictionary of Occupational Titles, Bureau of Labor statistics, and the testimony of vocational experts. *See Pitcher*, 2008 WL 619175, at *7 (citations omitted). In this case, Plaintiff argues that he is precluded from performing two of the three jobs the vocational expert identified in her testimony. *See* Dkt. No. 19 at 12-13. In particular, Plaintiff argues that the ALJ's finding limiting him to simple instructions and directions is incompatible with the surveillance system monitor and order clerk – food and beverage jobs because they have a reasoning level of 3 out of 6. *See id.*; *see also* AR at 76. However, "a limitation to simple work does not preclude a job that has a reasoning development level of 2 or 3 . . . ." *Reynolds v. Comm'r of Soc. Sec.*, No. 11-CV-00778, 2012 WL 2050410, *6 (N.D.N.Y. June 6, 2012). Accordingly, the Court finds that there was substantial evidence in the record to support the ALJ's step-five finding. *See Richardson*, 402 U.S. at 401.

### IV. CONCLUSION

Having reviewed the entire record in this matter, the parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Plaintiff's motion for judgment on the pleadings, *see* Dkt. No 19, is **DENIED**; and the Court further

**ORDERS** that Defendant's motion for judgment on the pleadings, *see* Dkt. No. 20, is **GRANTED**; and the Court further

**ORDERS** that the Commissioner's decision is **AFFIRMED** and Plaintiff's complaint is **DISMISSED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in favor of Defendant and close this case.

**IT IS SO ORDERED.**

Dated: March 28, 2016
      Syracuse, New York

Frederick J. Scullin, Jr.
Senior United States District Judge